UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT E. ALLEN                                      CIVIL ACTION

VERSUS                                               NO. 09-2825

NEWELL NORMAND ET AL.                               SECTION "F" (2)

## ORDER ON MOTIONS, AND
## REPORT AND RECOMMENDATION

Plaintiff, Robert Allen, is a prisoner currently incarcerated in the South Mississippi Correctional Institution in Leakesville, Mississippi. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Jefferson Parish Sheriff Newell Normand, Judge Robert Murphy of the 24th Judicial District Court in Jefferson Parish and Jefferson Parish District Attorney Paul Connick. Plaintiff alleges that he was falsely arrested on September 25, 2008 on a theft charge that originated in Jefferson Parish in 2000 and that he was wrongfully incarcerated in the Jefferson Parish Correctional Center for 88 days after being arrested, until the charge was dismissed. He seeks $3.7 million in damages, expungement of the arrest from his record and a public apology. Record Doc. No. 2 (Complaint at ¶ V).

On April 28, 2009, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Daniel Martiny, David Glen Sanders, Bridget Benoit Denicola and Barron Burmaster, counsel for defendants. Plaintiff was sworn and

testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Plaintiff testified that he has been incarcerated in Mississippi since December 22, 2008, based upon revocation of his probation for a previous conviction for "uttering forgery," and that he is currently serving a term of two years in prison. He confirmed that he asserts a single claim in this case based upon his allegedly false arrest on September 25, 2008 on an eight-year-old Jefferson Parish theft charge.

Allen testified that, on September 25, 2008 he was transported from the Acadia Parish jail in Crowley, Louisiana, to Jefferson Parish by two Jefferson Parish sheriff's deputies based upon a charge of theft of more than $100 from a Metairie, Louisiana, car dealership in April 2000. He stated that he told the two transport deputies at the time they picked him up that he had been incarcerated in Mississippi at the time of the alleged theft in April 2000 and that he therefore could not have committed that offense. Allen testified that he was incarcerated in the Acadia Parish jail on September 25, 2008 on a charge of passing a bad check.

Plaintiff acknowledged that he was arrested on September 25, 2008 based upon a bill of information issued in 2000, asserting the theft charge in Jefferson Parish. Allen said he had <u>not</u> been arrested in Jefferson Parish in 2000 on that charge because "I was

in the State of Mississippi. I was incarcerated. I had been incarcerated at that time since December 2, 1999" at the Delta Correctional Facility in Greenwood, Mississippi. He said he remained incarcerated in Mississippi continuously from December 2, 1999 until July 19, 2004.

Allen said he has not seen the bill of information charging him with the April 2000 theft in Jefferson Parish. He stated that the warden at the Acadia Parish jail tried to explain Allen's situation to the Jefferson Parish transport deputies, but that they took Allen to Jefferson Parish anyway and charged him with the 2000 theft, which he testified he could not have committed. Allen testified that he was taken to Judge Murphy's courtroom in Jefferson Parish on October 2, 2008, where he attempted to explain that he had been incarcerated in Mississippi at the time of the alleged theft. Allen stated that the judge would not listen to his explanation and asked him about his history of felony convictions and whether he would accept "time served" in exchange for a guilty plea, but Allen refused. Allen said that he gave his "time sheets" concerning his past incarceration in Mississippi to the court and the assistant district attorney, "but they wouldn't do anything."

Asked if the transportation deputies from Jefferson Parish had a warrant or an attachment for Allen's arrest when they picked him up in Crowley, plaintiff stated, "I've never seen anything," and said he did not know whether the deputies had any such

documentation.  He said he overheard the deputies say that, if Allen actually had been incarcerated in Mississippi at the time of the alleged theft in 2000, "he wouldn't be there [in jail in Jefferson Parish] long."

Plaintiff testified that after the charges against him in Jefferson Parish were dismissed, he was transported to jail in Mississippi based on a Mississippi warrant for his arrest, which alleged a probation violation.  Allen added, "I feel that I should be owed something.  I spent 88 days [in the Jefferson Parish jail].  There were three court hearings, . . . October 2nd, October 30th and 11/6/08, and I had to go all the way to December 18th [2008] before anything was completed.  And the assistant D.A. read the same information on December 18th to Judge Murphy that stated that I was incarcerated."  He complained that he was brought to the Jefferson Parish court eight years after the theft was alleged to have occurred.

On cross-examination, Allen denied any dealings concerning an automobile in Jefferson Parish in 2000.  He also denied having been arrested in St. Tammany Parish on a bad check charge in April 2000, because he was incarcerated in Mississippi on that date.  He denied information that defense counsel said he had obtained, indicating that Allen had not been incarcerated in Mississippi until November 2000. Allen acknowledged that he was represented by appointed counsel during the Jefferson Parish

court proceedings in 2008 and that he had given his lawyer his Mississippi incarceration records at that time.

At the time of the <u>Spears</u> hearing, two motions to dismiss filed by defendants were pending: (1) Judge Murphy filed a Rule 12(b)(6) motion to dismiss, arguing that plaintiff's suit was barred by 42 U.S.C. § 1997e(e), the Eleventh Amendment and the doctrine of judicial immunity. Record Doc. No. 10. (2) District Attorney Connick filed a Rule 12(b)(6) motion to dismiss, arguing that the complaint fails to state a claim upon which relief can be granted and asserting the doctrine of prosecutorial immunity. Record Doc. No. 15. Plaintiff filed written oppositions to both motions. Record Doc. Nos. 22, 26.

At the conclusion of the hearing, the court converted Connick's motion to a motion for summary judgment and ordered defendants Normand and Connick to file a new motion for summary judgment that would include the necessary verified exhibits concerning the issue of probable cause to arrest Allen in September 2008. Allen was given time to file a response. Record Doc. Nos. 28, 33.

Defendants' new motion for summary judgment and plaintiff's opposition memorandum were filed timely. Record Doc. Nos. 31, 37. In his opposition, plaintiff asked for leave to file additional exhibits. His request for an extension of time was

granted and he was ordered to file any additional materials no later than June 29, 2009. Record Doc. No. 38.

Plaintiff did not file a timely supplemental memorandum that included the records from the Mississippi jail that he was seeking. Instead, on June 15, 2009, he filed a memorandum in which he stated that he has sent three requests to Harrison and Lamar Counties in Mississippi seeking documents, but the counties have not responded. Among other requests (addressed below) in his memorandum, Allen asked the court to order the Mississippi counties to provide him with the documents he has requested. Alternatively, he asked whether he can subpoena the documents. Record Doc. No. 39, at pp. 2-3.

Construing this portion of plaintiff's memorandum as a motion for extension of time to obtain the Mississippi records, the motion is DENIED. No further extensions of time will be granted for Allen to obtain the records, because these records are immaterial and irrelevant in this action. For purposes of defendants' pending motions, Allen does <u>not</u> need to show that he could not have committed the theft with which he was charged in Jefferson Parish. The only relevant fact for purposes of the motions, and it is undisputed on the current record, is that the theft charge against him was dismissed.

The verified exhibits filed by defendants Connick and Normand with their motion for summary judgment establish that the following proceedings took place in the 24th Judicial District Court for Jefferson Parish. On May 11, 2000, Allen was charged with

the theft on April 7, 2000 of an automobile valued at over $1,000, in violation of La. Rev. Stat. § 14:67. Record Doc. No. 31-6, Defendants' Exh. 1, Bill of Information. Allen did not appear for arraignment hearings on May 19 and June 22, 2000. The court's minute entries for those dates indicate that he was never arrested on the charge. The district attorney requested and the court ordered that an attachment be issued. Record Doc. Nos. 31-7, 31-8, Defendants' Exhs. 2, 3, minute entries. The attachment order stated that Allen was charged with one violation of La. Rev. Stat. § 14:67, for theft of more than $100. The order directed the Sheriff of Jefferson Parish to "attach the body of" Allen and bring him before the court to answer for contempt in failing to attend the two hearings. Record Doc. No. 31-6, Defendants' Exh. 4, Attachment.

A "Case Review" printout that was attached as an exhibit to defendant Connick's motion to dismiss is still not verified and was not attached to the motion for summary judgment filed by Connick and Normand. However, Allen's testimony and written submissions confirm what the Case Review record shows. When he was brought before the court, he entered a plea of not guilty. Hearings were held on October 2, October 30, November 6 and December 18, 2008. His attorney filed a motion to quash, which was granted on December 22, 2008, and the theft charge was dismissed. Record Doc. No. 15-6, Defendant's Exh. 1, Case Review, State of Louisiana v. Robert Allen, No. 2889-D.

I.  ORDER ON MOTIONS

As noted above, plaintiff's memorandum filed on June 15, 2009 contained several requests, which the court construes as motions. Record Doc. No. 39. In addition to the previously addressed request for extension of time to obtain the records from Mississippi, Allen seeks leave to add a new defendant, Evans Schmidt, who was his public defender on the theft charge in Jefferson Parish. He also seeks leave to add Judge Murphy's bailiff, Jefferson Parish Sheriff's Deputy Porter, to his witness list. Finally, he asked that counsel be appointed to represent him. Record Doc. No. 39. On June 24, 2009, plaintiff filed another motion to amend to add Schmidt as a defendant. Record Doc. No. 42.

Plaintiff's motion to amend his complaint to add public defender Schmidt as a defendant is DENIED as futile. To state a claim under Section 1983, plaintiff must show "(1) deprivation of a right, privilege or immunity secured by the federal laws or Constitution (2) by one acting under color of state law." Mississippi Women's Med. Clinic v. McMillan, 866 F.2d 788, 791 (5th Cir. 1989) (emphasis added); accord Morris v. Dearborne, 181 F.3d 657, 666 n.6 (5th Cir. 1999). Plaintiff must show that the defendant's actions are "fairly attributable to the state." West v. Atkins, 487 U.S. 42, 49 (1988). However, it is well established that a public defender is not generally considered to be a state actor. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Small v. Dallas County, 170 Fed. Appx. 943, 2006 WL 925500, at *1 (5th Cir. 2006); Hudson v. Hughes,

98 F.3d 868, 873 (5th Cir. 1996). Because Schmidt is not a state actor, plaintiff's attempt to add a Section 1983 claim against him has no basis in federal law. If the motion to amend were granted, the claim against Schmidt would be dismissed on motion for failure to state a claim. Accordingly, the motion to amend is futile.

Allen's motion to add another witness to his witness list is DISMISSED AS PREMATURE. If this report and recommendation is accepted and plaintiff's lawsuit is dismissed, the motion will be moot. If the report and recommendation is not adopted, plaintiff can reurge the motion.

Plaintiff sent another memorandum to the court that was filed on June 17, 2009, in which he asks again that the court appoint counsel to represent him. Record Doc. No. 41. Plaintiff also contends in this memorandum that he received a letter from counsel for Sheriff Normand, which allegedly included a threat. Allen requests the court to order Sheriff Normand's counsel not to communicate with him and to remove Sheriff Normand's counsel from representing his client.

Allen's motion to have counsel appointed is DENIED. "A district court should appoint counsel in a civil rights case only if presented with exceptional circumstances." Norton v. Dimazana, 122 F.3d 286, 293 (5th Cir. 1997). Having also considered the factors suggested in Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir. 1982), I find that this case is not complex and that plaintiff is capable of adequately presenting it, as he

demonstrated during the April 28, 2009 conference with the court and in his written submissions in opposition to the pending motions. As a direct participant in the events that allegedly formed the basis of his complaint, he has been in a position adequate to investigate the case. The evidence that has been or may be presented is simple and will require no particular skill in its presentation.

The motion to require Sheriff Normand's counsel not to communicate with Allen is DENIED. Plaintiff has not demonstrated that counsel threatened him in any way.

As to plaintiff's requests that the court order the Mississippi counties to produce records and remove Sheriff Normand's counsel from representing his client, the court construes these requests as a motion for injunctive relief. That motion is addressed below in my report and recommendation.

II.     STANDARDS OF REVIEW

(A)     28 U.S.C. § 1915A Screening

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); <u>Lair v. Purdy</u>. 84 Fed. Appx. 413, 2003 WL 23021483, at *1 (5th Cir. 2003); <u>Lewis v. Estes</u>, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2000); <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be

dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Bridgewater v. Simmons, No. 08-40597, 2009 WL 1181518, at *1 (5th Cir. May 1, 2009); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Longoria v. Dretke, 507 F.3d 898, 901 (5th Cir. 2007); Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton, 122 F.3d at 292 (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly

identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

(B)    Rule 12(b)(6) Motions

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must take the well-pleaded factual allegations of the complaint as true. In Re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." Lewis v. Fresne, 252 F.3d 352, 357 (5th Cir. 2001); accord Lovick v. Ritemoney Ltd., 378 F.3d 433, 437 (5th Cir. 2004).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' 'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" In Re Katrina Canal

Breaches Litig., 495 F.3d at 205 (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974, 1965 (2007) (quotation marks, citations and footnote omitted)).

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.  Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570  (5th Cir. 2005).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  United States ex rel. Bain v. Georgia Gulf Corp., 386 F.3d 648, 654 (5th Cir. 2004) (quotation omitted).

(C)     Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists if a rational trier of fact could not find

13

for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); <u>accord</u> <u>Duron v. Albertson's LLC</u>, 560 F.3d 288, 291 (5th Cir. 2009).

III.   <u>ANALYSIS</u>

(A)   <u>Judicial Immunity</u>

Plaintiff's claim against Judge Murphy is barred by judicial immunity. For more than one hundred years, judges have been held immune from liability for judicial acts done within their jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978) (citing <u>Bradley v. Fisher</u>, 80 U.S. 335 (1871)); <u>Mays v. Sudderth</u>, 97 F.3d 107, 110 (5th Cir. 1996). "A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any acts performed in a judicial role." <u>Ammons v. Baldwin</u>, 705 F.2d 1445, 1447 (5th Cir. 1983) (citations omitted); <u>accord</u> <u>Hosseini v. Sharp</u>, 216 Fed. Appx. 392, 2006 WL 3019245, at *1 (5th Cir. 2006). This judicial immunity applies even if a judge is accused of acting maliciously or corruptly. <u>Stump</u>, 435 U.S. at 356-57; <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967), <u>overruled in part on other grounds by Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), <u>as recognized by Hill v. Shelander</u>, 992 F.2d 714, 716

(7th Cir. 1993); Hosseini, 2006 WL 3019245, at *1 (citing Mays, 97 F.3d at 110-11). Judicial officers are absolutely immune from liability for damages unless they are without jurisdiction. Moore v. King, 210 F.3d 366, 2000 WL 290132 , at *1 (5th Cir. 2000) (citing Mays, 97 F.3d at 111); Davis v. Bayless, 70 F.3d 367, 373(5th Cir. 1995).

In the past, however, judicial officers did not enjoy absolute immunity from suits seeking injunctive relief. Relief of that nature was available under Section 1983 against state court judges acting in their judicial capacity. Pulliam v. Allen, 466 U.S. 522, 541-42 (1984). However, the Federal Courts Improvement Act of 1996 ("FCIA") amended Section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983.

The FCIA therefore statutorily overruled Pulliam's holding regarding the availability of injunctive relief against a state judge in his official capacity. Guerin v. Higgins, No. 00-0244, 2001 WL 363486, at *1 (2d Cir. Apr. 11, 2001); Green v. District Attorney Ofc., No. 08-3685, 2009 WL 651132, at *5 (E.D. La. Mar. 10, 2009) (Feldman, J.); Nollet v. Justices, 83 F. Supp. 2d 204, 210 (D. Mass. 2000); see also Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (The 1996 amendment to Section 1983 limits the relief available against a federal judge to declaratory relief.). Thus, injunctive relief

16

against Judge Murphy is not available to Allen in this Section 1983 action. Green, 2009 WL 651132, at *5; Collins v. Drake, No. 07-8220, 2009 WL 653053, at *7 (E.D. La. Jan. 30, 2009) (Chasez, M.J.), report & recommendation adopted, 2009 WL 653047 (E.D. La. Mar. 12, 2009) (Duval, J.); Tesmer v. Granholm, 114 F. Supp. 2d 603, 618 (E.D. Mich. 2000); Nollet, 83 F. Supp. 2d at 210.

Furthermore, to whatever extent, if any, that Allen seeks an order of this court directing Judge Murphy to take some action concerning plaintiff's state court proceedings, a federal court has no power to direct a state court or its judicial officers in the performance of their duties when mandamus is the only relief sought. Rhodes v. Keller, 77 Fed. Appx. 261, 2003 WL 22309132, at *1 (5th Cir. 2003); Santee v. Quinlan, 115 F.3d 355, 356-57 (5th Cir. 1997); Prestenbach v. Louisiana, No. 08-4726, 2008 WL 5391994, at *1 (E.D. La. Dec. 19, 2008) (Barbier, J.); Scott v. Coady, No. 08-4649, 2008 WL 4891114, at *2 (E.D. La. Oct. 22, 2008) (Vance, J.). This court is without authority to order officials of the state court in which plaintiff's case is pending to treat his claims in any particular way, or to otherwise interfere with the rulings of its judges.

To whatever extent, if any, that Allen seeks declaratory and injunctive relief against Judge Murphy and the other defendants, his claims against Judge Murphy are within the scope of the judge's role as a judicial officer and therefore within his jurisdiction. Consequently, the doctrine of absolute judicial immunity bars Allen's suit

for injunctive relief against Judge Murphy.  For these reasons, Judge Murphy's motion must be granted, and all of Allen's claims against Judge Murphy must be dismissed as legally frivolous or for failure to state a claim for which relief can be granted.

(B)    Prosecutorial Immunity

Plaintiff has named Connick, the Jefferson Parish District Attorney, as a defendant in this case based solely upon Connick's actions as a prosecutor in connection with state court criminal proceedings against Allen.  However, the district attorney is immune from suit for damages in this instance.

Courts employ a "functional" test to determine whether officials are entitled to absolute immunity, in which they look to the "nature of the function performed, not the identity of the actor who performed it."  Forrester v. White, 484 U.S. 219, 227-29 (1988); accord Hill v. City of Seven Points, 31 Fed. Appx. 835, 2002 WL 243261, at *10  (5th Cir. 2002); Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir. 1995).

It is well established that prosecutors are immune from liability under Section 1983 for actions taken as an advocate in pursuit of a criminal prosecution.  Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Quinn v. Roach, No. 08-40633, 2009 WL 1181072, at *9 (5th Cir. May 4, 2009); Hill, 2002 WL 243261, at *10.  This immunity applies to a prosecutor's actions in "initiating prosecution and carrying [a] criminal case through

the judicial process." Id. (quotation omitted); accord Buckley v. Fitzsimmons, 509 U.S. 259, 270, 272 (1993); Quinn, 2009 WL 1181072, at *9.

Thus, "[a] prosecutor enjoys absolute immunity from personal liability for damages under section 1983 for actions 'initiating a prosecution and . . . presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'" Esteves v. Brock, 106 F.3d 674, 676 (5th Cir. 1997) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)); accord Quinn, 2009 WL 1181072, at *9; Hill, 2002 WL 243261, at *10. "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Kerr v. Lyford, 171 F.3d 330, 337 & n.10 (5th Cir. 1999), abrogated in part on other grounds by Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003) (quotation omitted); accord Champluvier v. Couch, 309 Fed. Appx. 902, 2009 WL 320829, at *1 (5th Cir. 2009); Hill, 2002 WL 243261, at *10.

Furthermore, once a probable cause determination has been made, the Constitution does not require a prosecutor to dismiss charges as soon as the prosecutor obtains exculpatory evidence. Walker v. Gasparini, 210 F.3d 377, 2000 WL 133837, at *1 (7th Cir. 2000); Garcia v. City of Chicago, 24 F.3d 966, 970 (7th Cir. 1994); Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 31 (1st Cir. 1995). As discussed fully in the next section of

this report and recommendation, the Jefferson Parish Sheriff's deputies had probable cause to arrest Allen, based on the attachment issued by the state court. Here, as in Walker and Guzman-Rivera, although "exculpatory evidence later turned up, the prosecutors are absolutely immune from liability for their evaluation of the evidence and their decision to continue prosecuting [plaintiff]" until the theft charge was ultimately dismissed. Walker, 2000 WL 133837, at *1; see also Guzman-Rivera, 55 F.3d at 31 ("Even if it were shown that the defendants reviewed the evidence, found Guzman innocent, and did nothing, their decision . . . not to dismiss his criminal case lies at the heart of the prosecutorial function," which renders them immune from liability).

However, while prosecutors enjoy absolute immunity from damages liability, they are not immune from Section 1983 suits seeking injunctive relief. Supreme Ct. v. Consumers Union of U.S., Inc., 446 U.S. 719, 736-37 (1980) (citing Gerstein v. Pugh, 420 U.S. 103 (1975)). Allen seeks monetary damages but, reading his complaint broadly, he also seeks declaratory and injunctive relief in the form of expungement of the arrest from his record and a public apology.

To the extent that plaintiff seeks injunctive relief in the form of expungement of the arrest record, he fails to establish the necessary elements for the relief sought. As a threshold matter, he lacks standing to bring his claim for injunctive relief.

[A] plaintiff lacks standing to sue under Article III of the Constitution unless she alleges an actual case or controversy. In other words, the plaintiff must show a personal stake in the outcome of the case by alleging direct injury that is real and immediate, not conjectural or hypothetical. Thus, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."

Srivastava v. Newman, 12 Fed. Appx. 369, 2001 WL 338110, at *3 (7th Cir. 2001) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-496 (1974)) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983); Sierakowski v. Ryan, 223 F.3d 440, 442-44 (7th Cir. 2000); Garcia, 24 F.3d at 969) (emphasis added). In the instant case, just as in Srivastava, Allen's "request for an injunction arises from a criminal case that has long since terminated. [He] alleged no threatened or pending criminal prosecution and therefore lacks standing to seek injunctive relief." Id.

Allen's claimed injuries resulting from his arrest, namely, being held for 88 days in the Jefferson Parish Jail, occurred solely in the past. The theft charge against him was dismissed and he was released from the custody of the Jefferson Parish Sheriff. There is no possibility that he will be arrested or incarcerated on the theft charge again. The 24th Judicial District Court's records reflect that the charge was dismissed and any search of his criminal history will also reflect the dismissal. His continued incarceration in Mississippi is pursuant to a conviction in that state unrelated to the Louisiana theft charge. Thus, Allen lacks standing to bring a claim for injunctive relief. In the absence

of standing, no actual case or controversy exists for purposes of Article III of the Constitution, which means that this court lacks jurisdiction to decide plaintiff's claim. Lyons, 461 U.S. at 101-03; Srivastava, 2001 WL 338110, at *3.

Second, even if plaintiff had standing to seek an injunction, "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again–a likelihood of substantial and immediate irreparable injury." Lyons, 461 U.S. at 111. "[R]ecognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." Id. (quotation omitted). The same facts that demonstrate that Allen lacks standing also establish the nonexistence of any likelihood of substantial and immediate irreparable injury if his arrest record is not expunged.

Third, plaintiff has not identified any statute that would authorize the expungement of his arrest record. Rather, he relies solely on alleged constitutional grounds. This court has the power to expunge records of an unconstitutionally obtained indictment, arrest and/or conviction. Tabbaa v. Chertoff, 509 F.3d 89, 96 (2d Cir. 2007); United States v. Rowlands, 451 F.3d 173, 176-77 (3d Cir. 2006); Hedgepeth ex rel. Hedgepeth v. Washington Metro. Area Transit Auth., 386 F.3d 1148, 1152 (D.C. Cir. 2004); United

States v. Sumner, 226 F.3d 1005, 1010-11 (9th Cir. 2000); United States v. McLeod, 385 F.2d 734, 749-50 (5th Cir. 1967); United States v. Goodrich, No. 94-8054-CR, 2008 WL 398950, at *1 (S.D. Fla. 2008) (citing Rogers v. Slaughter, 469 F.2d 1084, 1085 (5th Cir. 1972)).

However, "'the court's privilege to expunge matters of public record is one of exceedingly narrow scope.'" Cavett v. Ellis, 578 F.2d 567, 568 (5th Cir. 1978) (quoting Rogers, 469 F.2d at 1085) (internal citations omitted); see also Thompson v. Rutherford County, No. 07-5680, 2009 WL 776104, at *1 (6th Cir. Mar. 24, 2009) (quoting United States v. Flowers, 389 F.3d 737, 739 (7th Cir. 2004)) ("[T]he power is one of exceedingly narrow scope, and 'the balance very rarely tips in favor of expungement.'"); Rowlands, 451 F.3d at 176-77 (quotation omitted) ("The collective experience of our judiciary reflected by reported cases . . . discloses that expunction of criminal court records is an extraordinary remedy," which is used only to remedy "an unconstitutional conviction or an abuse of power."); United States v. Friesen, 853 F.2d 816, 818 (10th Cir. 1988) (Only "unusually compelling circumstances . . . justify the exercise of the trial court's 'narrow' power to order expunction."); In re TwoBears, No. 80-20073-Bre, 2007 WL 1232043, at *1 (W.D. Tenn. Apr. 26, 2007) (The remedy "is appropriate only when a defendant is factually innocent and can demonstrate that the continued public

availability of the record will cause great harm that outweighs the public and governmental interest in maintaining the record.").

Thus, the rule enunciated by the Fifth Circuit in <u>Cavett</u> and <u>Rogers</u> "prohibits a lower federal court from ordering the editing of public records in the general case. [Unless plaintiff] has alleged [a] special circumstance that would take him out of the <u>Rogers</u> rule, the district court [is] clearly correct in dismissing [a Section 1983 plaintiff's] request for the expunction of public records." <u>Id.</u>

<u>McLeod</u> provides an example of extraordinary circumstances in which the Fifth Circuit ordered expungement. The defendants were white county officials, including a state court judge, in Selma, Alabama. In 1963, defendants repeatedly arrested, tried and convicted local African-Americans who tried to register to vote, and other persons who encouraged the local African-Americans to register, on various charges, such as disturbing the peace, concealing their identity and driving cars with minor violations of traffic laws. <u>McLeod</u>, 385 F.2d at 738-39. The Fifth Circuit found that defendants' actions threatened, intimidated and coerced African-Americans with respect to their right to vote, in violation of the Civil Rights Act of 1957. <u>Id.</u> at 741-43. The court granted the request of the United States to "expunge from the record all arrests and convictions resulting from the prosecutions which form the basis for these suits." <u>Id.</u> at 750.

In the instant case, as discussed in the following section of this opinion, Allen has failed to produce any evidence to create a genuine issue of material fact that his arrest violated the Constitution. In the absence of a colorable constitutional violation, the mere dismissal of the theft charge against him is "not alone sufficient to justify the exercise of such an extraordinary remedy" as expungement. United States v. Montgomery, No. 7:07-CR-28(HL), 2008 WL 276555, at *1 (M.D. Ga. Jan. 29, 2008). Because plaintiff has not alleged any special circumstance that would take his case out of the general Rogers rule, his claim for injunctive relief must be dismissed.

"Public policy requires here that the retention of records of the arrest and of the subsequent proceedings be left to the discretion of the appropriate authorities." Cavett, 578 F.2d at 568. However, Allen is not without a remedy. Louisiana law provides a specific procedure for expungement of arrest records by the court of the parish where he was arrested. La. Rev. Stat. § 44:9B(1). Thus, plaintiff's claim for expungement must be brought before the 24th Judicial District Court for Jefferson Parish.

Accordingly, District Attorney Connick is entitled to summary judgment in his favor on plaintiff's claim for injunctive relief, and his motion should be granted.

(C)    <u>False Arrest/False Imprisonment</u>

Even if defendants Murphy and Connick were not immune from suit, summary judgment must be granted dismissing plaintiff's complaint against all three defendants because the undisputed facts establish that Allen cannot prevail on his claims of false arrest and false imprisonment.

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted–indeed, for every suspect released. Instead, [p]olice officers are . . . required under the Fourth Amendment to make a determination of probable cause before any significant pretrial restraint of liberty.

<u>Sorenson v. Ferrie</u>, 134 F.3d 325, 328 n.3 (5th Cir. 1998) (citing <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979); <u>Duckett v. City of Cedar Park</u>, 950 F.2d 272, 278 (5th Cir. 1992)) (quotations omitted).

To succeed on a claim of false arrest in violation of either the Fourth Amendment or Louisiana state law, plaintiff must establish that defendants did not have probable cause to make an arrest. Probable cause exists under federal law when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been or is being committed and that the individual arrested is the guilty party. <u>United States v. Hearn</u>, 563 F.3d 95, 103 (5th Cir. 2009); <u>Sorenson</u>, 134 F.3d at 328; <u>Wells v. Bonner</u>, 45 F.3d 90, 95 (5th Cir. 1995); <u>United States v. Raborn</u>, 872 F.2d 589, 593 (5th

Cir. 1989). Similarly, under Louisiana law, probable cause exists "when the detaining officer has articulable knowledge of particular facts sufficient to reasonably suspect the detained person of criminal activity." <u>Tabora v. City of Kenner</u>, 650 So. 2d 319, 322 (La. App. 5th Cir. 1995) (citations omitted). Thus, if Allen "cannot show that the [arresting] officers lacked probable cause, [he] has failed to state the violation of a constitutional right." <u>Sorenson</u>, 134 F.3d at 328.

To establish a claim for false imprisonment under federal law, plaintiff must prove (1) an intent by defendant to confine him, (2) acts resulting in confinement, (3) plaintiff's consciousness of confinement or resulting harm, and (4) the deprivation of a constitutional right, such as the right not to be arrested or detained without probable cause. A plaintiff seeking recovery for false imprisonment under federal constitutional law must establish that the defendant's misconduct exceeds mere negligence. <u>Brown v. Bryan County</u>, 67 F.3d 1174, 1180, 1181 (5th Cir. 1995); <u>Sanders v. English</u>, 950 F.2d 1152, 1159 (5th Cir. 1992); <u>Simmons v. McElveen</u>, 846 F.2d 337, 339 (5th Cir. 1988).

To succeed on a claim of false imprisonment under Louisiana law, plaintiff must show that he was detained unlawfully. Detention is unlawful if it is made without color of legal authority. Thus, false imprisonment occurs when an arrest is made either without probable cause, without any legal process or warrant, or under a warrant that is null and void on its face. <u>Winn v. City of Alexandria</u>, 685 So. 2d 281, 283 (La. App. 3d Cir.

1996); <u>Slaydon v. Department of Wildlife & Fisheries</u>, 636 So. 2d 1151, 1152 (La. App.

3d Cir. 1994); <u>Hays v. Hansen</u>, 692 So. 2d 3, 5 (La. App. 4th Cir. 1997); <u>Tabora</u>, 650 So.

2d at 322; <u>Patin v. Duplessis Pontiac-Buick-GMC</u>, 632 So. 2d 790, 792 (La. App. 1st Cir.

1993).

> In the Fifth Circuit, a court's
>
> determination concerning probable cause is guided by the Supreme Court's mandate in <u>Illinois v. Gates</u>:  We look to the totality of the circumstances to determine whether probable cause, or in this case arguable probable cause, existed.  We are mindful of the notion that "probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules."

<u>Mendenhall v. Riser</u>, 213 F.3d 226, 231 (5th Cir. 2000) (quoting <u>Illinois v. Gates</u>, 462

U.S. 213, 232 (1983)).

> The law charges us with determining the reasonableness of the actions taken in light of the cause that existed <u>at the time of arrest</u>. . . . "Whether [an] arrest [is] constitutionally valid depends in turn upon whether, <u>at the moment the arrest was made</u>, the officers had probable cause to make it – <u>whether at that moment</u> the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense."

<u>Id.</u> (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991)) (emphasis by the Fifth Circuit).

A later dismissal of the charge, a subsequent failure of a court to find probable cause or

even an acquittal is not determinative of whether probable cause existed to make an

arrest.  <u>Id.</u>; <u>Byers v. City of Eunice</u>, 157 Fed. Appx. 680, 2005 WL 3228114, at *4 (5th

Cir. 2005); Wells, 45 F.3d at 95. "Whether the crime actually occurred or whether a suspect is eventually convicted is irrelevant to the probable cause analysis. The inquiry focuses only on what the officer could have reasonably believed at the time . . . ." Morris v. Dillard Dept. Stores, Inc., 277 F.3d 743, 754 n.10 (5th Cir. 2001) (citing Sorenson, 134 F.3d at 328 n.3).

In the instant case, Allen was arrested in September 2008 pursuant to an attachment issued by a state court judge in Jefferson Parish in June 2000. On May 11, 2000, Allen was charged with theft of an automobile valued at over $1,000 in violation of La. Rev. Stat. § 14:67. When he did not appear for hearings on May 19 and June 22, 2000, the court ordered that an attachment be issued. The attachment directed the Sheriff of Jefferson Parish to "attach the body of" Allen and bring him before the court to answer for contempt in failing to attend the hearings. The attachment also stated that Allen was charged with one violation of La. Rev. Stat. § 14:67, for theft of more than $100. The Sheriff's deputies who transported Allen from the Acadia Parish jail to Jefferson Parish had probable cause to arrest him based on the attachment, a form of legal process that was facially valid.

Because the deputies had probable cause to arrest Allen, neither the arrest nor the subsequent 88-day detention were unconstitutional. Defendants are entitled to summary

judgment in their favor as a matter of law on plaintiff's false arrest and false imprisonment claims.

IV.    MOTIONS FOR INJUNCTIVE RELIEF

As noted above, Allen has asked the court in two recently filed memoranda to (1) order the Mississippi counties where he was jailed in 2000 to produce records of his incarceration and (2) remove Sheriff Normand's counsel from representing his client. Record Doc. Nos. 39, 41.  The court treats these requests as motions for injunctive relief.

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and/or preliminary injunction must set forth "specific facts shown by affidavit or verified complaint" that show that the moving party will suffer irreparable injury before a hearing on the matter may be held.  A temporary restraining order and preliminary injunction are extraordinary equitable remedies that may be granted only if plaintiff establishes four essential elements:  (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause defendants; and (4) that the injunction will not disserve the public interest.  Sugar Busters LLC v. Brennan, 177 F.3d 258, 264 (5th Cir. 1999).  The requisite showing is "a substantial threat of irreparable injury if the injunction is not

issued." <u>DSC Commc'ns Corp. v. OGI Techs., Inc.</u>, 81 F.3d 597, 600 (5th Cir. 1996) (emphasis added).

Applying the foregoing legal standards to the facts he alleges, plaintiff's testimony, written submissions and the record establish that he is <u>not</u> entitled to a temporary restraining order or preliminary injunction. Although plaintiff's written submissions allege that Sheriff Normand's counsel threatened him, Record Doc. No. 41 at p. 1, and that he needs the records from Mississippi to support his opposition to the pending motions to dismiss and for summary judgment, these wholly unsubstantiated allegations are the rankest form of speculation, and Allen has not established that any injury he may suffer in the future would be irreparable. Any cognizable injury that he may suffer as a result of defendants' alleged or anticipated actions may adequately be remedied through the ordinary judicial process without need for a preliminary injunction or temporary restraining order.

It also cannot be concluded that plaintiff's complaint presents "a substantial likelihood of success on the merits." <u>DSC Commc'ns Corp.</u>, 81 F.3d at 600. Plaintiff's allegations must be accepted as true for the initial screening process required for such cases. 28 U.S.C. § 1915A; <u>Martin v. Scott</u>, 156 F.3d 578 (5th Cir. 1998). Furthermore, the court must take the well-pleaded factual allegations of the complaint as true when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and factual controversies

are construed in the light most favorable to the nonmovant when addressing a motion for summary judgment. I have complied with these standards above. However, no such requirement applies to plaintiff's request for injunctive relief. As discussed in the preceding sections, Allen has not shown that a violation of his clearly established constitutional rights has occurred. Moreover, because Allen seeks an injunction, injunctive relief by this court that would interfere with the administration of prison or Clerk of Court functions in Mississippi or with Sheriff Normand's right to choose counsel to represent him, without justification, would disserve the public interest.

For all of these reasons, plaintiff's motion for injunctive relief should be **DENIED**.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that defendants' motions to dismiss and/or for summary judgment, Record Doc. Nos. 10, 22 and 26, be GRANTED, that plaintiff's motions for injunctive relief, Record Doc. Nos. 39 and 41, be DENIED and that plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___6th___ day of July, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE